UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WESTFALL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BALL METAL BEVERAGE CONTAINER CORPORATION, a Colorado Corporation, and Does 1-20 inclusive.<br><br>Defendant. | No. 2:16-cv-02632-KJM-GGH<br><br>ORDER |

The plaintiffs, hourly workers, move for class certification on behalf of themselves and other similarly situated former and current employees of defendant Ball Metal Beverage Container Corp. ("BMBC" or "BALL") for several labor code violations. Pls.' Mot. Class Cert. (Mot.), ECF No. 27; Pls.' Mem. P. & A., ECF No. 28. Defendant opposes their motion. Def.'s Opp'n Class Cert. (Opp'n), ECF No. 42. Plaintiffs have replied. Pls.' Reply Class Cert. (Reply), ECF No. 45. For the reasons discussed below, the court finds class certification is appropriate, and the motion is GRANTED IN PART and DENIED IN PART.

////

////

////

I.   BACKGROUND

   A.   Procedural Background

   Plaintiffs filed this action on September 7, 2016 in the Superior Court for the County of Solano. Am. Notice of Removal, ECF No. 2. On November 3, 2016, defendant removed the action to this court. *Id*. On April 6, 2017, plaintiffs filed the operative complaint. First Am. Compl. (FAC), ECF No. 20. Plaintiffs filed their motion for class certification on July 28, 2017. Mot. Defendant filed an opposition and objections to plaintiffs' evidence, in support of its motion on August, 28, 2017, and plaintiffs replied on September 12, 2017. Opp'n; Reply.

   Plaintiffs have not requested a hearing on the pending motion, which the court has submitted on the papers. Min. Order, ECF No. 49 (citing *Merrill v. S. Methodist Univ*., 806 F.2d 600, 608–09 (5th Cir. 1986); *Arcera v. Chinlund*, 565 F.2d 253, 255 (2d Cir. 1977)).

   B.   Factual Background and Claims

   BMBC is a Colorado corporation which operates a plant making aluminum cans in Fairfield, California. Pls.' Mem. P. & A. 2. From September 7, 2012 through the present, BMBC has employed approximately 140 to 150 hourly employees in the production, engineering, and/or support departments at the Fairfield plant. *Id*. at 8.

   Named plaintiffs Robert Westfall, David Anderson and David Ellinger work as hourly-paid employees at BMBC's Fairfield plant, and named plaintiff Lynn Bobby was formerly employed at the plant as an hourly employee in the production department. FAC ¶¶ 19–22. Westfall works as an Electronic Technician, Anderson worked as an Electronic Technician and now works as a Machinist, Ellinger works as a Maintenance Worker, and Bobby worked as a Machinist/Mechanic. *Id*.

   This putative class action arises from one central claim: Plaintiffs allege they were required to monitor pages that sounded over an intercom system at defendant's plant at all times while they were working, including during their meal and rest breaks, a practice they say constitutes a failure to provide breaks under California labor law. *See generally* FAC. Plaintiffs ask the court to certify the following seven claims for class treatment: (1) failure to pay wages

2

1 and/or overtime, California Labor Code §§ 510, 1194 and 1199; (2) failure to provide meal periods, *id*. §§ 226.7 and 512; (3) failure to allow rest periods, *id*. § 226.7; (4) wage statement penalties, *id*. § 226(a); (5) waiting time penalties, *id*. § 203; (6) unfair competition, Cal. Bus. & Prof. Code § 17200; and (7) civil penalties under the Private Attorneys General Act, Cal. Labor Code § 2698. FAC ¶¶ 42–79.

To the extent plaintiffs' sixth unfair competition claim survives, it is based on plaintiffs' Labor Code claims. *See* FAC ¶ 65. As the sixth claim is entirely derivative of the first five, it is not evaluated separately here. To the extent the seventh PAGA claim survives, it also is derivative of other Labor Code violations and not evaluated separately here. *See* Cal. Lab. Code § 2699.

Plaintiffs seek compensatory damages for their unpaid wages and/or overtime not paid from at least four years prior to present and for missed meal and/or rest periods in the amount of the class member's hourly wage. FAC ¶¶ 1, 2. The average salary for hourly employees is $29.00 per hour. Opp'n 2. Plaintiffs also seek penalties, injunctive relief, and restitution under various statutes, prejudgement and post-judgement interest, and attorney's fees and costs. FAC ¶¶ 1–14.

C.  Class Definition

Plaintiffs seek certification of one class[1] defined as: "All former and current hourly employees of BALL who were employed at the Fairfield plaint in the production, engineering and/or support departments between September 7, 2012 and trial." Mot. 2.

II.  CLASS ACTIONS GENERALLY

Litigation by a class is "an exception to the usual rule" that only the individual named parties bring and conduct lawsuits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation and internal quotation marks omitted). Only when a class action "promot[es] . . . efficiency and economy of litigation," should a motion for certification be granted. *Crown, Cork*

---

[1] Although plaintiffs mention subclasses twice in their Memorandum of Points and Authorities, once on page 11 and again on page 15, they have not defined any subclasses or specifically moved the court to certify subclasses. *See, e.g.,* Pls.' Mem. P. & A. 11:25, 15:5

1 *& Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). A court considers whether class litigation promotes "economies of time, effort and expense, and . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment.

To be eligible for certification, the proposed class must be "precise, objective, and presently ascertainable." *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D. Cal. Apr. 19, 2010); *see also* 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1760 (3d ed. 2017) ("If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." (citations omitted)). The proposed class definition need not identify every potential class member from the very start. *See, e.g.*, *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). The requirement is a practical one. It is meant to ensure the proposed class definition will allow the court to efficiently and objectively ascertain whether a particular person is a class member, *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010), for example, so that each putative class member can receive notice, *O'Connor*, 184 F.R.D. at 319.

Class certification is governed by Federal Rule of Civil Procedure 23. The court must first determine whether to certify a putative class, and if it does, it must then define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g). To be certified, a putative class must meet the threshold requirements of Rule 23(a) and the requirements of one of the subsections of Rule 23(b), which defines three types of classes. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Here, plaintiffs seek certification under only Rule 23(b)(3),[2] which provides for certification of a class where common questions of law and fact predominate and a class action is the superior means of litigation. Pls.' Mem. P. & A. 12-16.

---

[2] While plaintiffs state at one point in their motion that the motion "should be granted as the proposed class meets all requirements of certification under 23(b)(1) and 23(b)(2)," Mot. 2:8, this is the only time they mention (b)(1) or (b)(2). Otherwise, plaintiffs' briefing signals they are seeking certification under 23(b)(3) only, *see generally*, Pls.' Mem. P. & A., ECF No. 28, and the court construes their motion as such.

Rule 23(a) imposes four requirements on every class. First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, questions of law or fact must be common to the class. *Id.* 23(a)(2). Third, the named representatives' claims or defenses must be typical of those of the class. *Id.* 23(a)(3). And fourth, the representatives must "fairly and adequately protect the interests of the class." *Id.* 23(a)(4). If the putative class meets these requirements, Rule 23(b)(3) imposes two additional requirements: first, "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and second, "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. 23(b)(3). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

"The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO C.L.C. v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010). This burden is real; Rule 23 embodies more than a "mere pleading standard." *Wal-Mart*, 564 U.S. at 350. The party must "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). The trial court must then conduct a "rigorous analysis" of whether the party has met its burden, *id.*, and "analyze each of the plaintiff's claims separately," *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). The court must verify the putative class's "actual, not presumed, conformance with Rule 23(a) . . . ." *Wal-Mart*, 565 U.S. at 351 (alterations omitted) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). This inquiry often overlaps with consideration of the merits of the plaintiffs' substantive claims. *Wal-Mart*, 564 U.S. at 351–52. Indeed, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original) (citing *Wal-Mart*, 564 U.S. at 351–52); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[O]ur cases

5

1  requir[e] a determination that Rule 23 is satisfied, even when that requires inquiry into the merits
2  of the claim."). These same "analytical principles" also apply to the court's analysis of whether
3  the plaintiff meets its burden under Rule 23(b). *Comcast*, 133 S. Ct. at 1432.

## III. EVIDENTIARY ISSUES

As noted above, defendant objects to plaintiffs' evidence offered in support of the motion for certification, as set forth in the Declaration of Plaintiff Robert Westfall and the Declaration of Matthew Eason. Def.'s Objs., ECF No. 42-1. Defendant relies on Federal Rules of Evidence 401, 602, 702, 801, 802 and 901 and Section 1401 of the California Evidence Code as its grounds for objection. *Id*. In essence, defendant argues certain portions of the declarations lack foundation, relevance, or proper authentication, and other excerpts are vague or inadmissible as hearsay.

The court DENIES defendant's objections to the declarations. "Numerous courts in this circuit have made clear that '[f]or purposes of the class certification inquiry, the evidence need not be presented in a form that would be admissible at trial.'" *Brown v. Abercrombie & Fitch Co.,* CV 14-1242-JGB (VBKx), 2015 WL 9690357, at *5 (C.D. Cal. July 16, 2015) (citing *Stitt v. S.F. Mun. Transp. Agency*, No. 12-CV-3704 YGR, 2014 WL 1760623, at *1 n.1 (N.D. Cal. May 2, 2014)). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [motion for class certification]." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011); *Greer v. Dick's Sporting Goods, Inc.*, No. 15-CV-01063 KJM, 2017 WL 1354568, at *4 (E.D. Cal. Apr. 13, 2017) (denying similar objections to declarations for the same reason).

## IV. ANALYSIS

### A. Applicable Law

In California, wage and hour claims are governed by two sources of law: the California Labor Code and eighteen wage orders adopted by the Industrial Welfare Commission (IWC). *See Mendoza v. Nordstrom, Inc.*, 2 Cal. 5th 1074, 1082 (2017) (citing *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026 (2012)). The California Supreme Court accords

these two sources of law equal dignity. *Id*. They are to be interpreted "in light of the remedial nature of the legislative enactments" and "liberally construed with an eye to promoting ... [the] protection [of employees]." *Brinker,* 53 Cal.4th at 1026–27 (quoting *Industrial Welfare Com. v. Superior Court*, 27 Cal.3d 690 (1980)).

IWC Wage Order No. 4–2001, Cal. Code Regs. tit. 8, § 11040(11), defines certain required thirty-minute meal breaks. An employee may recover one hour of pay for each day on which the employer did not offer a compliant rest break. *Id*. § 11080(12)(B). The wage order also provides that "[u]nless the employee is relieved of all duty" during a meal break, it is "considered an 'on duty' meal period and counted as time worked." *Id*. § 11040(11); *see also* Cal. Lab. Code § 1194(a) (allowing an employee to recover in a civil action any unpaid overtime wages, interest, attorney's fees, and costs). "[S]tate law prohibits on-duty and on-call rest periods. During required rest periods, employers must relieve their employees of all duties and relinquish any control over how employees spend their break time." *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 260 (2016) (citing *Brinker,* 53 Cal.4th at 1038–39). An employer must: (a) "relieve[] its employees of all duty," (b) relinquish[] control over their activities," (c) "permit[] them a reasonable opportunity to take an uninterrupted 30-minute break," and (d) "not impede or discourage them from doing so." *Brinker*, 53 Cal. 4th at 1040–41.

Plaintiffs' first claim alleges that BMBC owes them wages and/or overtime pay for the time they spent taking on-duty meal breaks because they were required to monitor the pages during this time. FAC ¶¶ 42–44. In their second and third claims, plaintiffs point to two sections of the labor code requiring an employer to pay one hour of pay at an employee's regular rate for each workday on which a duty-free meal or rest period was not provided. *Id.* ¶¶ 45–55 (citing to Cal. Lab. Code §§ 226.7 and 512). They claim damages for these unpaid penalties. FAC ¶¶ 44, 50, 55.

B.  Evidence

Plaintiffs rely primarily on declarations and have furnished declarations of 27 members of the putative class. ECF No. 30. In the declarations, putative class members attest directly to BMBC's interrupting their breaks by requiring each of them to stop what they were

doing and listen to the pages to determine whether the announcement applied to him or her. *See, e.g.*, *id.*

Plaintiffs also have provided a copy of the Position Description, which applies to all "maintainer" positions, posted in the BMBC facility from June 1, 2012, to present. *See id.* Ex. AA. They also claim to provide a copy of a Shop Policies memo provided to named plaintiff Westfall shortly after he started, although the memo does not appear to be attached.[3] *See id.* Ex. AA & BB. The Position Description notes that one of the physical requirements is a "high degree of mental effort due to considerable interruptions and/or frequent changes of activity or workloads during a typical day." *Id.* Ex. AA at 3. The memo, as explained by Westfall in his declaration and cited by plaintiffs in their briefing, Pls.' Mem. P. & A. 7, mandates that all employees are "responsible for all calls between 6:00 and 6:00 and trouble calls … will be answered by all on duty ETs." *Id.*

C. Certification

We first analyze whether the putative class meets the four threshold requirements of Rule 23(a) and then determine whether the class satisfies the requirements of Rule 23(b). *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

1. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the instant case, there are approximately 140 to 150 members of the proposed class. Pls.' Mem. P. & A. 8. Defendant contends plaintiffs cannot satisfy the numerosity requirement because the group is not so large that joinder would be impracticable" and cites two cases involving consumer class actions in which the numerosity requirement was satisfied. Opp'n 22 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Fraser et al v. Wal-Mart Stores, Inc.*, 2016WL 6208367 (E.D. Cal. Oct. 24, 2016), at *3)). Defendant further argues that numerosity is lacking as to any subclass; however, as noted above, plaintiffs have not identified any subclasses, and the court declines to define any subclasses under

---

[3] The absence of the memo from the record does not affect the court's analysis here.

8

Rule 23(c)(5). *Id*. The court finds that the proposed class satisfies the numerosity requirement, which is presumptively satisfied when there are at least forty members. *See Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 456 (C.D. Cal. 2012).

### 2. Typicality

The "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). BMBC does not specifically dispute the typicality of the claims and defenses of the proposed class representatives. *See generally* Opp'n. Plaintiffs argue the typicality prong of Rule 23 is satisfied because the representative plaintiffs work or worked as non-exempt, hourly employees and were "required to listen to the public access/paging communication system and monitor for pages" "even when taking a break in the Suitable Resting Facility." Pls.' Mem. P. & A. 11-12. The court finds the claims and defenses of the proposed class representatives—Westfall, Anderson, Ellinger and Bobby—are typical, and Rule 23(a)(3) is satisfied.

### 3. Adequacy

Class representatives must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Although BMBC argues the named plaintiffs lack the ability to adequately represent the class, BMBC does not give adequate detail to show that there is any conflict of interest or other reason the named plaintiffs will not or cannot act vigilantly in prosecuting the action on behalf of the putative class. Opp'n 22. The court finds Rule 23(a)(4) is satisfied.

### 4. Commonality and Predominance

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Such questions exist where class members suffer the same alleged injury, *Falcon*, 457 U.S. at 156, such that simultaneous litigation is productive, *Wal-Mart*, 131 S. Ct. at 2551. "This does not mean merely that [class members] have all suffered a violation of the same

provision of law." *Id.* Rather, the claims "must depend upon a common contention," the nature of which "is capable of classwide resolution." *Id.* Common litigation must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Although just one common question could suffice to establish commonality, *id.* at 2556, the true inquiry is into "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation," *id.* at 2551 (emphasis in original) (citation and internal quotation marks omitted). "Dissimilarities within the proposed class[, however,] ... have the potential to impede the generation of common answers." *Id.* (citation and internal quotation marks omitted).

After establishing the existence of common questions of law or fact, the proponent of a putative class also must establish that these questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). Some variation is permitted among individual plaintiffs' claims, *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963 (9th Cir. 2013), but Rule 23(b)(3) is "more demanding than Rule 23(a)," *Comcast*, 133 S. Ct. at 1432. Courts are thus required "to take a 'close look' at whether common questions predominate over individual ones," *id.* (citation omitted), "begin[ning] ... with the elements of the underlying cause of action," *Erica P. John Fund, Inc.*, 131 S. Ct. at 2184. Plaintiffs need not show at the threshold certification threshold stage predominant questions will be answered in their favor. *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1196 (2013). The court considers the merits of the plaintiff's underlying claim only to the extent required by Rule 23. *Id.* at 1194–95 (citing *Wal–Mart*, 131 S. Ct. at 2552 n.6); *Comcast*, 133 S. Ct. at 1432 ("Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim'… because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting *Falcon,* 457 U.S. at 160).

10

1         To prevail on a motion to certify a class under Rule 23(b)(3), the party seeking certification must show: "(1) that the existence of individual injury resulting from the alleged ... violation ... [is] capable of proof at trial through evidence that is common to the class rather than individual to its members; and (2) that the damages resulting from that injury [are] measurable on a class-wide basis through use of a common methodology." *Comcast*, 133 S. Ct. at 1430 (citation and internal quotation marks omitted). "Rule 23(b)(3), however, does not require a plaintiff ... to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen*, 133 S. Ct. at 1197 (emphasis and alterations in Amgen ) (citation and internal quotation marks omitted). Similarly, because " 'individualized monetary claims belong in Rule 23(b)(3),'" "the presence of individual damages cannot, by itself, defeat class certification...." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (quoting *Wal–Mart*, 131 S. Ct. at 2558).

        In the context of a wage and hour claim, an employer's "uniform ... policies... are relevant to the Rule 23(b)(3) analysis," but a district court may not "rely on such policies to the near exclusion of other relevant factors touching on predominance." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 955 (9th Cir. 2009). Rather, the court must "consider[ ] all factors that militate in favor of, or against, class certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (citation omitted).

        Here, the common issue that predominates over individual issues is whether BMBC's "use of the public address system and its requirement that employees listen to the communications to see if they applied to them and respond if necessary," violated its requirement under California law to provide its employees with off-duty meal and rest breaks. Pls.' Mem. P. & A. 12. The putative class consists of those employees who not only were actually called away from a meal or rest break and not compensated for the missed break, but to the entire group of employees who work at the plant and were required to listen to the pages during breaks to determine whether or not the pages applied to them. *Id*. "All of these positions were subject to the same method of communication and utilized the same designated rest break area." Reply 3; *see, e.g.*, Pls.' Mem. P. & A. 5:15–16, 8:17–20. It is exposure to this common method of

/////

11

communication, not the issue of whether or not the employees were called away from their meal or rest break, which is the predominating common issue in this case.

BMBC makes several arguments regarding the substantive merits of plaintiffs' claim and cites several cases to support its position. *See generally* Opp'n. While the court looks to the merits of the plaintiff's underlying claim to determine whether commonality exists for the purposes of Rule 23, it does not, at this stage, "judge the validity of [plaintiffs'] claims." *ConocoPhillips Co.*, 593 F.3d at 808 (reversing denial of class certification because "the district court not only 'judge[d] the validity" of plaintiffs' "on duty" claims, it did so using a nearly insurmountable standard, concluding that merely because it was not assured that plaintiffs would prevail on their primary legal theory, that theory was not the appropriate basis for the predominance inquiry."). The court need not now inquire, as BMBC suggests, into whether or not plaintiffs' claims will ultimately prevail. It may of course consider merits challenges at the later summary judgment stage, *cf.* Opp'n 17 (citing *Novoa v. Charter Communications*, LLC, 100 F.Supp.3d 1013 (E.D. Cal. April 21, 2015)), or on a motion to decertify the class at a later point in the case. *United Steel*, 593 F.3d at 809 ("Moreover, a district court retains flexibility to address problems with a certified class as they arise, including the ability to decertify."). The court finds common issues predominate here.

### 5. Superiority

Predominance of common questions does not alone justify approval of a class action, "for another method of handling the [case] may be available which has greater practical advantages." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment. Rule 23(b)(3) requires a court find a class action is the "superior" method of resolution. *Id.* This constraint is meant to lead the court "to assess the relative advantages of alternative procedures for handling the total controversy." *Id.* Rule 23(b)(3) provides that superiority is determined by considering, for example,

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation
> of the claims in the particular forum; and
>
> (D) the likely difficulties in managing the class action.

*Id.*; *see also Zinser v. Accuflix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

The Supreme Court has acknowledged that Rule 23(b)(3) contemplates the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617 (citation and internal quotation marks omitted). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action . . . . A class action solves this problem by aggregating the relatively paltry potential recoveries . . . ." *Id.*

The court first assesses the proposed class against the factors described in Rule 23(b)(3). Regarding the first factor, "the class members' interests in individually controlling the prosecution or defense of separate claims," Fed. R. Civ. P. 23(b)(3)(A), when smaller dollar amounts are in controversy, this factor generally favors certification. *Zinser*, 253 F.3d at 1190–91. Resolution of this factor takes into account the policy noted above of incentivizing legitimate claims even when, as here, individual damages are modest. *Amchem*, 521 U.S. at 617; Pls.' Mem. P. & A. 15 ("Given the amounts at issue, [p]laintiff[s] … would not likely be able to secure individual representation for their claims."). Large, complex claims do not fit so well in a class as do smaller, simpler claims. *See Zinser*, 253 F.3d at 1190–91. Here, the relatively small size of the putative class and likely relatively small individual claims asserted by plaintiffs do not make individual litigation attractive or sustainable. *Cf. Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 220–21 (E.D. Cal. 2015) (finding relatively small individual claims in a similar California wage and hour class action). Additionally, defendant does not dispute this factor in its opposition. *See generally* Opp'n. Thus, this factor favors certification.

The second factor, the "extent and nature of any litigation concerning the controversy already commenced by or against members of the class," Fed. R. Civ. P. 23(b)(3)(B), is meant to "assur[e] judicial economy and reduc[e] the possibility of multiple lawsuits." *Zinser*, 253 F.3d at 1191 (quoting 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1780 at 568–70 (3d ed. 2017)). Here, the parties have not described, and the court is not aware of any other related litigation. This factor favors certification.

The third factor is "the desirability or undesirability of concentrating the litigation" in this forum. Fed. R. Civ. P. 23(b)(3)(C). The putative class comprises only those current and former employees at the Fairfield plant, located in this district. Mot. 2. There is no basis for a non-California forum. Moreover, the entire class is presumably in this federal judicial district. This factor favors certification.

The fourth factor weighs the "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This is the only superiority factor BMBC disputes. Opp'n 24. Plaintiffs propose to conduct trial in two phases: the first to determine liability, and the second to determine damages. *See* Pls.' Mem. P. & A. 15. They propose the first phase to rely on "testimony and declarations regarding the use of the PA/paging system used to communicate with the employees throughout the plant," *id.,* and say "[t]he lion's share of this litigation can be resolved in the liability phase of trial." *Id*. The second phase would use BMBC records and timekeeping data "to determine the number of violations [and] the aggregate hourly wages and penalty calculations." *Id*. at 16. Defendant argues that plaintiffs have not proposed a trial plan and the "class claims are not manageable" because plaintiffs were not all affected by the interruptions in the same way. Opp'n at 24. These differences, however, speak to the individual damages inquiry that may need to be conducted at trial, which is not enough for the court to determine that class treatment is not favorable. *See Leyva*, 716 F.3d at 514 ("[T]he presence of individual damages cannot, by itself, defeat class certification …."). This class action is manageable due to plaintiffs proposed trial plan and the relatively small number of plaintiffs. *Cf. Greer*, 2017 WL 1354568, at *10 (finding class action superior in a similar California wage and hour claim where plaintiff proposed a similar bifurcated trial plan).

On balance, application of the four factors suggests a class action is the superior means to try the common questions of law and fact that predominate here.

The Ninth Circuit also has required district courts to consider alternative means of litigating a proposed class action. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) ("A class action is the superior method for managing litigation if no realistic alternative exists."). In particular, individual litigation, joinder, multidistrict litigation, or an administrative or other non-judicial solution may be superior. *See* 7A Charles A. Wright, et al., *Federal Practice & Procedure* § 1779 (3d ed. 2017). Because class members here have modest claims, individual litigation is unlikely to present a viable means of recovery. Additionally, all of the relevant evidence is in one location as the putative class is located only at the Fairfield plant. There is no reason to think joinder or multidistrict litigation is an option, and there is no administrative forum available to plaintiffs which could address their claims. The class therefore satisfies the superiority requirement as to claims one, two, three, six and seven.

D.  Other Claims

1.  Fourth Claim (Wage Statement Penalties)

Employers must include certain information with paychecks, including, for example, wages earned, hours worked, all deductions, the dates of the pay period, the employer's name and address, and all applicable hourly rates. Cal. Lab. Code § 226(a). Plaintiffs allege in their fourth claim that BMBC did not include the required information on their paychecks. FAC ¶¶ 56-59. California law requires only a "very modest showing" of injury in a claim under this provision of the California Labor Code. *Jaimez v. DAIOHS USA, Inc*., 181 Cal. App. 4th 1286, 1306 (2010); *see also Escano v. Kindred Healthcare Operating Co., Inc*., No. 09–04778, 2013 WL 816146, at *11 (C.D. Cal. Mar. 3 2013) ("[T]he injury requirement should be interpreted as minimal in order to effectuate the purpose of the wage statement statute; if the injury requirement were more than minimal, it would nullify the impact of the requirements of the statute.").

Plaintiffs have not provided any examples of wage statements at all in support of their fourth claim. *Cf. Pena*, 305 F.R.D. at 224 (denying certification of wage statement subclass because plaintiffs failed to provide sufficient evidence when they only provided one wage

statement in support of their position). Accordingly, plaintiffs have not provided sufficient evidence to allow certification on this issue.

### 2. Fifth Claim (Waiting Time Penalties)

Section 201(a) of the California Labor Code provides, as a general rule, that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). Section 202(a) provides, as a general rule, that if an employee resigns, wages become due seventy-two hours later, unless the resigning employee gives seventy-two hours' notice, in which case wages are due immediately. *Id.* § 202(a). Section 203(a) provides that if an employer "willfully fails to pay" as required by sections 201(a) and 202(a), "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced" for up to thirty days. *Id.* § 203(a). Plaintiffs claim defendant did not pay them all wages due on their last day if they were fired, or within seventy-two hours if they resigned.

Plaintiffs have not provided any evidence to support certification on this issue. The only declarations plaintiffs have provided are those of current employees of BMBC. The only former employee named as a plaintiff is Lynn Bobby, but plaintiffs have not provided evidence to show Bobby or any other former employees were subject to waiting time penalties.

## V. CONCLUSION

As to the first, second, third, sixth and seventh claims, the court finds plaintiffs have satisfied the requirements of Rule 23(a) and (b) to allow class certification. The court therefore GRANTS IN PART plaintiffs' motion for class certification as to these claims, and otherwise DENIES the motion.

IT IS SO ORDERED.

This resolves ECF No. 27.

DATED: February 2, 2018.

_____
UNITED STATES DISTRICT JUDGE