UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WESTFALL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BALL METAL BEVERAGE CONTAINER CORPORATION,<br><br>Defendant. | No. 2:16-cv-02632 KJM CKD<br><br><br><br>ORDER |

Defendant's motion for relief from the ten-deposition limit came before the undersigned for hearing on April 24, 2019. (ECF No. 91.) Erin Scharg appeared for plaintiffs, and Christopher Ahern and Erin Price appeared for defendant. At the close of the hearing, the court took the matter under submission. Based on the parties' joint statement regarding the discovery dispute, the case record, and the representations of the parties, the undersigned finds and orders as follows.

I. Introduction

This wage-and-hour class action was removed to federal court in November 2016. In February 2018, the district judge certified a class consisting of certain former and current employees of defendant ("Ball Metal") at its Fairfield plant. (ECF No. 54.) Plaintiffs filed a motion for reconsideration, seeking to include additional claims within the scope of the class. (ECF Nos. 58-62, 64, 67.)

In April 2018, after the motion for reconsideration was fully briefed, the district judge conducted a case management conference at which the parties and the court discussed the need for a "trial plan" pursuant to Duran v. U.S. Bank Nat. Assn., 59 Cal. 4th 1, 13 (2014) (in a certified class action, requiring that plaintiffs present a manageable "trial plan" for the use of any representative evidence of liability, supported by statistical science and expert opinion). (ECF No. 73.) "The discussions included . . . the possibility of relief from the 10-deposition limit in [FRCP] 30, because the scope of the class member testimony at trial would naturally impact the scope of depositions needed to prepare for trial." (ECF No. 91-2 (Joint Statement) at 2-3.) In September 2018, after a second mediation failed to result in settlement, the district judge ordered the parties to file proposals regarding discovery, including a joint proposal regarding the need for a Duran "trial plan." (ECF No. 83.) The parties were ordered to "obtain input from experts" in statistics "as necessary" in developing their discovery plan proposals.[1] (Id.)

On January 15, 2019, the district judge granted plaintiffs' motion for reconsideration and certified a new, broader class. (ECF No. 85.) The class "consists of non-exempt employees who work in the production, support, and engineering departments of defendant's Fairfield manufacturing facility." (Joint Statement at 10.) Ball Metal "utilizes a plant-wide paging system, among other methods, to communicate with class members." (Id.) "In essence, plaintiffs argue that because employees must listen to/for pages over the intercom system, they are deprived of meal and rest periods, even though such meal periods are established and scheduled by the employer." (Joint Statement at 7.) "Plaintiffs submitted their class certification motion with identically-worded declarations from 26 declarants, to such effect." (Id.) "The current class consists of 169 total persons split across eight different job titles." (Joint Statement at 7-8.)

"Plaintiffs have not yet committed to a position on whether a trial plan under Duran is required, and the question of whether such a trial plan is required, has been deferred pending the outcome of [the instant] motion." (Joint Statement at 8; see ECF Nos. 88 & 89.)

---

[1] "As necessary, the Parties shall obtain input from experts qualified in relevant subject matters (such as statistics) in developing their discovery plan proposals[.]" (ECF No. 83 at 5, Order dated September 25, 2018.)

II. Motion for Relief from 10-Deposition Limit

In the instant motion, defendant seeks to take 121 class member depositions "in order to ensure that the record contains evidence from the eight different job titles represented in the class of 169 people." (Joint Statement at 9.) Plaintiffs concede that additional depositions are warranted, but dispute that 121 out of 169 class members (more than 70% of the class) should be deposed. (Joint Statement at 20.) The parties seek resolution of the following question, among others: "[T]o what extent is Defendant entitled to relief from the 10-deposition default limit" in Rule 30a?" (Joint Statement at 9.)

Under the Federal Rules of Civil Procedure Rule 30(a)(2), a party must obtain leave of court to take more than ten depositions if the parties have not stipulated to this effect. Leave to notice additional depositions is governed by Rule 26(b)(2), which requires the court to limit discovery if it determines that

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained by some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the permissible scope of discovery in Rule 26(b)(1) (any nonprivileged matter relevant to any party's claim or defense)

Archer Daniels Midland Co. v. Aon Risk Servs., Inc., 187 F.R.D. 578 (D. Minn. 1999). "More than 10 depositions per side must be justified under the 'benefits v. burdens' approach of Rule 26(b)(2)." Rutter Group Practice Guide: Fed. Civ. Procedure Before Trial, Calif. & 9th Cir. Ed., § 11:1371.

Defendant asserts that it needs 121 depositions based on "input from an expert qualified in statistical class sampling," Robert Crandall. (Joint Statement at 5-6; see ECF No. 91-3 (Ahern Decl.).) On January 29, 2019, defendant's counsel sent a letter "to provide Plaintiffs with Defendant's proposed class discovery plan" as required by a January 15, 2019 order.[2] (Ahern

---

[2] On January 15, 2019, when the new class was certified (ECF No. 85), the district judge reiterated her September 25, 2018 order language pursuant to a new stipulation and order. As

Decl. at 6.)  Defendant proposed that, "[d]ue to the relatively small class size here (total of 169 persons), and further stratification of the class into eight different job titles, defendant will require a stratified random selection of depositions that results in a minimum of 121 class member depositions, including depositions of the number of class members of each job classification[.]" (Id. at 7.)  Each deposition was expected to last 2-3 hours, "with approximately five (5) days of such depositions taking place every calendar month until completed."  (Id. at 8.)  Assuming an average 2.5 hour deposition, this amounts to roughly 302 hours of depositions.

Defendant's proposal was based on Crandall's study, which proposed the following sample size for each of the eight jobs in the class:

| Job Title | Number of class members | Required sample size |
| --- | --- | --- |
| Machinist | 9 | 9 |
| Maintainer Can | 69 | 30 |
| Maintainer Chem | 7 | 7 |
| Maintainer Chf Can | 21 | 21 |
| Maintainer Chf Chem | 1 | 1 |
| Mechanic Maintenance | 10 | 10 |
| Tech Electronic | 13 | 13 |
| Tech Production | 39 | 30 |
| **Total** | **169** | **121** |

(Ahern Decl. at 16.)  Notably, for six of the eight job titles, Crandall recommended that every employee/class member be deposed.  "Because job duties vary by position and some of the claims are not relevant to all job titles, a stratified sample by job title is necessary," Crandall wrote.  (Id. at 15.)  "Job titles without at least 30 employees cannot be reliably sampled.  Therefore, it would

---

before, she instructed the parties to exchange proposed discovery plans.  "As necessary, the Parties shall obtain input from experts qualified in relevant subject matters (such as statistics) in developing their discovery plan proposals."  (ECF No. 86 at 5.)  The district judge also ordered the parties to "confer regarding a reasonable time for Plaintiffs to provide a 'trial plan' if one is agreed as being needed[.]"  (Id.)

4

be appropriate that all employees in job titles without at least 30 employees be selected for depositions." (Id. at 16.) Crandall opined that, in the alternative, defendant could depose a "random sample" of class members, but to achieve a 5% margin of error,[3] 118 employees would have to be deposed. (Id.)

Plaintiffs responded to this letter on February 11, 2019, arguing that defendant's deposition plan was burdensome and unnecessary. Plaintiffs maintained that the eight job categories had no meaningful differences, as all class members were subject to the paging system and break-time expectations at issue. Plaintiffs wrote that their "theory of liability rests on a systemwide practice/policy that affects all putative class members. The primary gist of the dispute is that when the employees used the [facility's break areas], they did so on the condition that they remained vigilant and continued to work by monitoring pages," as a in a recent California Supreme Court case.[4] Plaintiffs contended that Ball Metal's use of the public address system "and its requirement that employees listen to the communications to see if they applied to them and respond if necessary affected all plaintiffs and class members." (Ahern Decl. at 47.) Without expert input, plaintiffs proposed "depositions of 10% of the putative class with a two hour limit on each deposition." (Id. at 49.) This would amount to 34 hours of depositions, as opposed to defendants' proposed 302 hours.

On February 19, 2019, defendant responded with a second declaration by Crandall, asserting that as 10% sample size was so small that it violated defendant's due process rights under Duran. (Id. at 51-57.) With only 17 depositions of a class of 169, the error rate would be about 22%, "which is not particularly useful to a finder of fact seeking to scientifically assess liability." (Id. at 56.) Defendant argues that it needs testimony from individual class members to counter plaintiffs' narrative that they were all subjected to the same treatment and expectations,

---

[3] "'Margin of error' is a statistical measurement of the reliability of an estimate produced by sampling. It reflects the amount by which the estimate may be wrong given a certain confidence interval. … Statisticians typically calculate margin of error using a 95 percent confidence interval, which is the interval of values above and below the estimate within which one can be 95 percent certain of capturing the 'true' result." Duran, 59 Cal. 4th at 56.

[4] Augustus v. ABM Security Services Inc., 2 Cal. 5th 257 (2016).

5

asking, e.g., whether they were permitted to leave the facility during rest breaks, believed they were required to respond to pages while on break, and were able to reschedule their breaks if interrupted. (Joint Statement at 8.) Defendant points out that, at a minimum, it needs to depose all 26 class members who filed declarations against it. (Id.)

"A trial plan that relies on statistical sampling must be developed with expert input and must afford the defendant an opportunity to impeach the model or otherwise show its liability is reduced." Duran, 59 Cal. 4th at 13. "The California Supreme Court explained in Duran [] that a sample must be sufficiently large to provide reliable information about the larger group. The court found a sample size of 8% inadequate." In re: Autozone, Inc., 2016 WL 4208200, *17 (N.D. Cal. Aug. 10, 2016), citing Duran, 59 Cal. 4th at 42 (internal quotations omitted). "The more diverse the population, the larger the sample must be in order to reflect the population accurately. The more homogeneous the population, the fewer cases that need to be sampled," the Duran court wrote. 59 Cal. 4th at 42. "It is impossible to determine an appropriate sample size without first learning about the variability in the population." Id.

Ninth Circuit district courts have applied Duran's reasoning as to sample size and its implications for due process. See, e.g., Arredondo v. Delano Farms Co., 2014 WL 5106401 (E.D. Cal. Oct. 10, 2014). In Arredondo, Judge Seng wrote:

> No Supreme Court or Ninth Circuit case law addresses the propriety of conducting discovery on absent class members. [Citations.] However, courts often apply the standard articulated by the Seventh Circuit in Clark v. Universal Builders, Inc., 501 F.2d 324, 340–41 (7th Cir.1974). This standard permits such discovery "only where the proponent of the discovery establishes" four criteria:
>
> that (1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class, (2) the discovery is necessary, (3) responding to discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent.

2014 WL 5106401, *4 (citations omitted). Arredondo, Judge Seng wrote, was "not like other class-action cases where plaintiffs can establish liability based on a company-wide policy. . . . Plaintiffs do not suggest that there was a wrongful companywide policy, but instead allege that wrongful practices resulted from a failure to implement or enforce proper policies." Id. at *3. In

that case, where "both parties [sought] to determine which class members performed uncompensated pre-shift work," and "given the extraordinary characteristics of this case," including "an estimated 25,000 workers who could conceivably fall within the class," Judge Seng allowed defendants to conduct a pilot study based on 196 depositions to determine the appropriate scale of further discovery. Id. at **6, 8.

The instant case is different from Arredondo, as it involves a small, defined class of 169 and an alleged company-wide policy that unlawfully interferes with rest breaks. Defendant has not explained why there are meaningful differences between the eight job groups, such that, per their expert, "a stratified sample by job title is necessary"; or alternatively, why it is necessary to achieve a 5% margin of error with 118 randomly-sampled depositions.

Plaintiffs, on the other hand, submit no expert testimony in support of their assertion that deposing 10% sample of the class, with an acknowledged 22.61% margin of error, is adequate. (See Joint Statement at 23-34.) Plaintiffs maintain that a 22% margin of error is "tolerable given the common condition at Defendant's Fairfield plant." (Joint Statement at 24.) "While a sample size of 118 to 121 may be necessary to reach the margin of error of 5%, it is unclear . . . why such a low margin of error is necessary in light of the facts presented," plaintiffs state. (Joint Statement at 24.)

Essentially, the choice appears to be between a burdensome number of depositions supported by expert testimony (defendant), versus a low number with no expert or statistical support (plaintiffs). The court concludes that, at the least, defendant should be able to depose the 26 class members who filed declarations against it.

III. Trial Plan

Defendant seeks relief from the 10-deposition limit, as set forth above. However, the parties also pose a broader question in their Joint Statement: "What is the scope of class discovery (in particular, how many depositions of class members) that is required to lay a sufficient record for determining whether a trial plan is required, and if one is required, what that trial plan should consist of." (Joint Statement at 9.)

////

This question, which goes to the presentation of the parties' respective cases at trial, seems too broad for magistrate judge resolution as a discovery dispute under Local Rule 302(c)(1). Since April 2018, the district judge has been discussing and/or trying to get the parties to agree whether a <u>Duran</u> trial plan is needed and, if so, what it should consist of. The undersigned expresses no opinion herein on whether a <u>Duran</u> trial plan is needed or the substance of any such plan. See, e.g., <u>Akila-Katita v. U.S. Bank Nat'l Assoc.</u>, 2017 WL 8949735, *7 (N.D. Cal. May 2, 2017) (district judge rules that "[d]efendant has not offered the Court enough detail ... for the Court to make a determination about" proposed <u>Duran</u> trial plan, and orders parties to "meet and confer . . . and to continue to work on a trial plan"; if parties couldn't agree, district judge was "strongly inclined to appoint a special master with experience in wage and hour litigation, the costs of which would be borne by Plaintiffs and Defendant, to assist with the formulation of a discovery plan and a trial plan.").

Accordingly, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for relief from ten-deposition limit (ECF No. 91) is granted in part as follows:

    a. Defendant may depose the 26 class members who filed declarations against it, not to exceed three hours per deposition;

    b. The 26-deposition limit is without prejudice to defendant's seeking additional depositions at a later date, either informally or by motion;

    c. No later than fourteen (14) days from the date of this order, plaintiffs shall provide defendant information clarifying which of the eight subgroups are represented in the 26 declarants, after which the parties shall meet and confer about any additional depositions beyond the 26 declarants;

    d. If defendant believes additional depositions are needed and the parties fail to agree on a number, plaintiff will be required to provide the kind of statistical evidence outlined in <u>Duran</u> in support of its position in any related motion briefing; and

    e. The parties are encouraged to use the undersigned's informal discovery

procedures, described under Case Management Procedures on the court web page of Magistrate Judge Carolyn K. Delaney, to resolve any further discovery disputes.

IT IS SO ORDERED.

Dated: April 29, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/westfall2632.depo_order