UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert Westfall, et al., | No. 2:16-02632-KJM-CKD |
| Plaintiffs, | ORDER |
| v. | |
| Ball Metal Beverage Container Corporation, | |
| Defendant. | |

Plaintiffs Robert Westfall, Lyn Bobby, David Anderson, and David Ellinger (named plaintiffs) are pursuing wage and hour claims on behalf of a certified class of approximately 200 members against defendant Ball Metal Beverage Container Corporation (BMBC).[1] The parties reached a settlement agreement, and plaintiffs move for preliminary approval of the settlement. *See* Mot., ECF No. 96. Defendant BMBC filed a statement of non-opposition. Non-Opp'n,

---

[1] The first amended complaint only lists Ball as a defendant, but in the motion for preliminary approval plaintiff also includes 20 doe defendants. *See* First Am. Compl. (FAC), ECF No. 20; Mem. P&A, ECF No. 96-2. If a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m). Here more than 90 have passed since the filing of this action, and plaintiff has not amended the complaint to name any does, therefore the court does not consider such defendants to be covered by any settlement.

1

ECF No. 100.  The court submitted the motion without argument and **grants the motion** for the reasons provided in this order.

## I.     BACKGROUND

Plaintiffs are former and current hourly employees of BMBC who were employed at defendant's Fairfield plant in production, engineering, and production support departments.  FAC ¶¶ 1–2; Mot. at 6.  According to the operative complaint, BMBC regularly underpaid plaintiffs during overtime shifts and inhibited plaintiffs from taking rest and meal breaks by requiring them to monitor announcements issued over the company's intercom system.  *Id.* ¶¶ 9–16.

In September 2016, plaintiffs filed a class action complaint in California state court.  Matthew Eason Decl. (Eason Decl.) ¶ 13, ECF No. 96-3.  BMBC timely removed this case to this district in November 2016.  Am. Notice of Removal, ECF No. 2.  Plaintiffs amended their complaint in April 2017.  *See generally* FAC.  The operative complaint alleges seven claims on behalf of the class: (1) failure to pay wages and/or overtime, California Labor Code §§ 510, 1194 and 1199; (2) failure to provide meal periods, *id.* §§ 226.7 and 512; (3) failure to allow rest periods, *id.* § 226.7; (4) wage statement penalties, *id.* § 226(a); (5) waiting time penalties, *id.* § 203; (6) unfair competition, Cal. Bus. & Prof. Code § 17200; and (7) civil penalties under the Private Attorneys General Act (PAGA), Cal. Labor Code § 2698.  *Id.* ¶¶ 42–79.  Plaintiffs sought penalties, injunctive relief, restitution under various statutes, pre-judgment and post-judgment interest, and attorney's fees and costs.  *Id.* ¶¶ 1–14 (Prayer for Relief).

After plaintiffs filed the complaint, the parties participated in numerous litigation activities.  In February 2017, the parties participated in an all-day mediation with Alan Berkowitz but were unable to reach a resolution.  Eason Decl. ¶ 15. The parties then engaged in written discovery and took some depositions.  *Id.* ¶ 16.  In July 2017, plaintiffs brought a motion to certify the class, ECF No. 27, that defendant opposed, ECF No. 42.  The matter was fully briefed and then submitted on the papers.  *See* Min. Order (Oct. 16, 2017), ECF No. 49.  The court ultimately certified the class finding the class satisfied the requirements under Rule 23(a) and Rule 23(b).  *See generally* Order (Feb. 5, 2018) (granting certification in part), ECF No. 54; Order (Jan. 15, 2019) (granting reconsideration of prior order and granting certification in full), ECF

1  No. 85.  Following class certification, the parties participated in a second mediation with Mr.
2  Berkowitz, 24 class members participated in depositions, and the parties came to a resolution
3  ultimately in a third mediation before Judge Raul Ramirez (ret.) in December 2019.  *Id.* ¶¶ 19–21.
4  Named plaintiffs worked with class counsel throughout the litigation; named plaintiff Westfall
5  attended all three mediations while the other named plaintiffs participated in the final one.  *Id.*
6  ¶ 23.  While the resolution occurred at the mediation in December 2019, the parties needed an
7  additional four months of negotiations to fine-tune the settlement agreement.  *Id.* ¶ 22.

Plaintiffs move for preliminary approval of the settlement agreement on behalf of all non-exempt electronic technicians, machinists/mechanics, maintenance workers or workers in production, engineering, and production support departments who have been employed by BMBC at the Fairfield facility from September 7, 2012 to the date of preliminary approval.  Notice of Errata, Jt. Stip. of Class Action and PAGA Settlement (Stip.) ¶¶ 1.2, 1.14–15, ECF No. 98.  BMBC agrees to pay $2,450,000 to settle this action.  *Id.* ¶ 1.26.  Of that sum, class counsel may receive $816,660 or one-third of the gross settlement, *id.* ¶ 1.9, up to $16,000 may be allocated to litigation costs of class counsel, *id*, no more than $15,000 will be allocated to administer the settlement, *id.* ¶ 1.5, and $30,000 ($7500 each) may be apportioned to named plaintiffs, *id.* 1.31.

The parties also allocated $20,000 from the gross settlement award to PAGA penalties.  Of the $20,000 sum, $15,000 will go to the California Labor Workforce Development Agency (LWDA) and $5,000 will be distributed to eligible class members proportionate to their class member share as described in further detail below.  *Id.* ¶ 1.29; *see also id.* ¶ 1.21 (describing calculation of the "class member share.").

The remainder of the settlement payment will be distributed to the approximately 200 class members, Mot. at 5, on a pro rata basis devised as follows.  The net settlement amount will be split into two groups – Group A (electronic technicians, machinists, millwrights, chemical processors, quality controllers, and production chiefs) and Group B (all other non-exempt workers including maintainers and warehouse workers).  *See* Stip. ¶ 1.21.  Group A will share 60 percent of the settlement amount and Group B will receive 40 percent.  *Id.*   The differing percentages reflect compensation for class members depending on the number of rest and meal break

interruptions they experienced. Mot. at 7. Within each group, class members will receive shares based on the number of weeks worked as an eligible class member. Stip. ¶¶ 1.21–23. Assuming the maximum cost to administer the settlement and to litigate the action, and including the $5,000 PAGA penalty awarded to the class as noted, the net settlement award to the parties will be $1,572,340.[2] In exchange for these benefits, class members will release defendants from the claims brought in this action. *Id.* ¶ 2.11; Release of Claims, Exs. 3 & 4 Mot., ECF No. 96-3. If the court reduces class counsel fees, the settlement agreement provides that the reduction will revert to the eligible class members. Stip. ¶ 1.9.

As part of the settlement, BMBC also agrees to stop "rounding" employee time and pay for all recorded time in one-minute increments. *Id.* ¶ 2.15. In addition, [BMBC] will remove, disable and/or deactivate any speakers connected to the paging system at its Fairfield, California facility, to the extent such speakers are located within [a break room or break area]." *Id.* BMBC will also amend and publish a new meal and rest period policy and conduct training regarding the new procedures. *Id.* BMBC agrees not to oppose class counsel's motion for attorney's fees and costs.

The parties also came to a resolution regarding notice. Within forty-five days of notice of preliminary approval, BMBC will provide a class list of class members with "their names, last known home address(es), full social security numbers, and dates of employment. . . ." *Id.* ¶ 2.5. Within thirty days of receiving that information, the class administrator will mail a notice packet to each class member via first-class mail. *Id.* ¶ 2.6. In the notice packet, the class administrator will approximate the individual class member's share. *Id.* Class members may object or opt out with written notice to the class administrator, within 45 days from the date the notice is mailed out. *Id.* ¶ 2.7(a)–(c). The proposed notice is five pages long and explains the nature of the litigation, the identity of class counsel, terms of the settlement agreement, the amount of requested attorney's fees, and how to participate, opt out, or object. *See* Notice of Pendency of

---

[2] The court derives this number by subtracting ($816,660 + $16,000 + $15,000 + $30,000 + $15,000) from $2,450,000.

1  Class Action and Proposed Settlement (Notice of Settlement), Ex. 2 Mot., ECF No. 96-3. The
2  notice is written in accessible language and includes the following subheadings: (1) "why should
3  you read this notice," (2) "what is this case about," (3) "what are the terms of the settlement,"
4  (4) "how can I claim money from the settlement," and (5) "what other options do I have" all of
5  which describe how to dispute information in the settlement, object to the settlement, and exclude
6  oneself from the settlement. *See id.* The stipulation states the notice will include an
7  approximated class member share, Stip. ¶ 2.6, though the form of notice provided does not
8  clearly reflect where this information will appear. *See* Notice of Settlement (providing no blank
9  space for the approximated number of the class member's share of the net settlement).

10  **II.    LEGAL STANDARD**

11  "Courts have long recognized that 'settlement class actions present unique due process
12  concerns for absent class members.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,
13  946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998),
14  *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). In
15  settlement classes, the class's motivations may not perfectly square with those of its attorneys.
16  *See id.* An attorney representing a settlement class may be tempted to accept an inferior
17  settlement in return for a higher fee. *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125
18  (9th Cir. 2002). Likewise, defense counsel may be happy to pay an adversary a bit more if the
19  overall deal is better for the client. *See id.*; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel*
20  *Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that settlement class
21  can be "a vehicle for collusive settlements that primarily serve the interests of defendants—by
22  granting expansive protection from law suits—and of plaintiffs' counsel—by generating large
23  fees gladly paid by defendants as a quid pro quo for finally disposing of many troublesome
24  claims.").

25  As the Ninth Circuit has recognized, however, the "governing principles are clear, but
26  their application is painstakingly fact-specific," and the court normally sees only the final result
27  of the parties' bargaining. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Judicial
28  review also takes place in the shadow of the reality that rejection of a settlement creates not only

delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Id.* Federal courts have long recognized a "strong" policy in favor of settling class actions. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Under Rule 23, before notice of a proposed settlement can be sent to a class, the court must determine that it "will likely be able to" both (1) "certify the class for purposes of judgment on proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). The first requirement, likelihood of class certification, requires the plaintiffs to satisfy the four prerequisites of Rule 23(a) and show their claim fits within one of the three categories of Rule 23(b). *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020). The second requirement, likely approval under Rule 23(e)(2), focuses on the fairness of the settlement for absent class members. The court evaluates preliminarily whether the proposed settlement "is fair, reasonable, and adequate," considering several factors listed in the Rule, such as whether the parties negotiated at arm's length and the terms of any agreement on fee awards. *See* Fed. R. Civ. P. 23(e)(2)(A)–(D). Over the years, the Ninth Circuit has also listed several "guideposts," "warning signs," and "red flags" for district courts to consider, such as the strength of the plaintiffs' case and the amount of fees in proportion to the compensation to class members. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 & nn.18–19 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen, AG*, 139 S. Ct. 2645 (2019).

A court must also ensure "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice may be made by mail, electronic means, "or other appropriate means." *Id.* Rule 23 also imposes specific requirements on the contents of the notice. *See* Fed. R. Civ. P. 23(b)(2)(B)(i)–(vii).

/////

/////

### III. DISCUSSION

The court certified the class in its prior orders, and thus this order need only address whether the settlement is "fair, reasonable, and adequate" and that the notice satisfies Rule 23(c)(2)(B). *See* Order (Feb. 05, 2018); Order (Jan. 15, 2019).

#### A. Likelihood of Approval Under Rule 23(e)

Likely certification is only the first step to preliminary approval under Rule 23. The second is the agreement's likely compliance with Rule 23(e)(2), which requires the court to decide whether the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Ninth Circuit decisions predating this rule list several similar factors for district courts to consider when weighing a proposed settlement agreement:

- the strength of the plaintiffs' case;
- the risk, expense, complexity, and likely duration of further litigation;
- the risk of maintaining class action status throughout the trial;

- the amount offered in settlement;
- the extent of discovery completed and the stage of the proceedings;
- the experience and views of counsel;
- the presence of a governmental participant; and
- the reaction of the class members to the proposed settlement.

*In re Volkswagen*, 895 F.3d at 610 n.18 (quoting *Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) were not intended to "displace" factors identified in existing judicial decisions).

No matter whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Briseño v. Henderson,* 998 F.3d 1014, 1023 (9th Cir. 2021) (applying *Bluetooth* red-flag factors to post-class certification settlement approvals); *In re Volkswagen*, 895 F.3d at 611 (quoting *Bluetooth*, 654 F.3d at 946–47). Three oft-cited "red flags" of unfair settlements are (1) attorneys' fees that make up a disproportionately large part of the distribution to the class, (2) "clear sailing" agreements "providing for the payment of attorneys' fees separate and apart from class funds" without defense objections and (3) agreements that permit unpaid fees to revert to defendants. *Briseño,* 998 F.3d 1014 at 1023.

Several of the factors the court considers in its evaluation suggest the proposed settlement's terms are within the range of possible approval. First, class counsel spent significant time and energy in written and deposition discovery; pursued motion practice including a motion to certify, a reply to the defense's opposition, and a motion for reconsideration; and participated in three full-day mediations with the opposing party. Eason Decl. ¶¶ 14–22. While a resolution occurred after the third mediation, it took an additional four months of negotiations to finalize details between the parties. *Id.* ¶ 22. These circumstances suggest negotiations were at arm's length and in good faith. *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). The named plaintiffs have also each devoted

many hours of their own time to the litigation and mediations, as discussed above. Eason Decl. ¶ 23. This supports a conclusion that the named plaintiffs and their counsel are dedicated and competent. The proposed agreement also treats similar class members similarly—with the exception of the proposed service awards, discussed below—and ensures that each receives at least a small award using BMBC's employment records. Stip. ¶ 1.21. Counsel believes the settlement is fair. Eason Decl. ¶¶ 24–25. And finally, a settlement would make potentially costly and time-consuming litigation unnecessary. *Id.* at ¶ 24.

Other factors, however, paint a more concerning picture. First, while the settlement agreement itself does not appear to contain a "clear sailing" provision whereby defendant agrees not to challenge attorney's fees, plaintiff's motion states the defense has agreed not to oppose class counsel's request for attorney's fees. Mot. at 10; *see Briseño,* 998 F.3d at 1026–27 ("A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members."). Courts have a "heightened duty to peer" into attorney's fees when a clear sailing provision exists. *Briseño,* 998 F.3d at 1027. Here, defense counsel agrees not to oppose class counsel's attorney's fees. Mot. at 10. However, unlike in *Briseño* where class counsel's fees constituted 88 percent of the settlement award, here class counsel will receive only 33 percent. *See Briseño,* 998 F.3d at 1020; *cf.* Stip. ¶ 1.9. While 33 percent is on the higher side, it is a far cry from the concerning 88 percent fee in *Briseño*. Additionally, unlike in *Briseño* and *Bluetooth,* the settlement agreement here does not contain a "reverter" clause where any money not granted to counsel would revert to the defendants. *Briseño,* 998 F.3d at 1027 ("the agreement contains a 'kicker' or 'reverter' clause in which [the defendant], not the class members, receives the remaining funds if the court reduces the agreed-upon attorneys' fees . . . this, too, . . . [is] as a warning sign."). Here, any fees not awarded to class counsel will revert to the class. Stip. ¶ 1.9.

Second, class counsel has not fully explained the risks involved in litigation. In the motion, class counsel explains that if litigation continues defendant would "vigorously challenge class certification" and contest liability for its use of a "paging system as a means of communication." Mot. at 12. According to the plaintiff, if defendant defeats liability on the

paging system question, the plaintiff's case could be worth nothing. *Id.* However, class counsel does not explain how defendant's contesting class certification poses a risk given that this court has already certified the class. In class counsel's declaration, Mr. Eason does not identify specific risks in litigating the action beyond general commentary that litigation can be risky and defendant's law firm is a "well-respected law firm with substantial experience." *See* Eason Decl. ¶ 24. The court will conduct a more searching analysis of these risks before granting final certification. To this end, it directs the *in camera* submission of mediation briefs prior to final approval to assist in its review at that point.

Third, the plaintiffs' attorneys' fees and incentive awards raise red flags. *See Bluetooth*, 654 F.3d at 947. First, counsel requests 33 percent of the gross settlement award. Stip. ¶ 1.9. The benchmark for attorney's fees in the Ninth Circuit is 25 percent. *See In re Easysaver Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018). However, courts have approved fees at 33 percent of the settlement fund for matters involving state law claims. *See, e.g., Rodriguez v. Penske Logistics*, LLC, No. 14-2061, 2019 WL 246652, at *12–13 (E.D. Cal. Jan. 17, 2019) (approving attorney's fees representing 31.2% of common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (approving attorney's fees in amount of 33.3% of common fund in settlement of wage-and-hour putative class action). Counsel's primary support for the size of their fee is a general statement that they have spent "hundreds of hours researching and litigating this matter over the course of more than three years." Mot. at 14. This record does not include sufficient support and justification. Without more information, the court can conclude neither that the proposed fee is reasonable nor that counsel's hours and rates could serve as a useful cross-check for the 33 percent fee award.

The proposed incentive awards are also cause for concern. As described above, the settlement provides the named plaintiffs $7,500 each as incentive awards. Stip. ¶ 1.31. In aggregate, this amount will total $30,000. Such large incentive awards set the named plaintiffs apart from the absent class members; a plaintiff who stands to receive several thousand dollars extra has an incentive to support agreements that are unfair to absent class members. *See Radcliffe v. Experian Info. Sols. Inc.,* 715 F.3d 1157, 1165, 1168 (9th Cir. 2013) (reversing

$5,000 incentive award when it was conditioned on plaintiffs' support of the settlement). For that reason, although the Ninth Circuit has agreed that incentive awards "may be proper," it has "cautioned that awarding them should not become routine practice." *Id.* at 1163. "[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* (quoting *Staton*, 327 F.3d at 975). The Circuit has regularly reversed excessive awards. *See id.* at 1163–64 (citing *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012), *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009), and *Staton*, 327 F.3d 938 (reversing awards of up to $50,000 to named plaintiffs)). However, in this case, class counsel explains that the named plaintiffs have spent hours assisting class counsel in litigating this case. Eason Decl. ¶ 23. Additionally, at least one named plaintiff attended all mediations. *Id.* Further, assuming the class has 200 members, and all members received an equal portion, the incentive award is close to the average award.[3] This last fact, along with the absence of any other indication counsel and the named plaintiffs have shirked their responsibilities to the absent class members, mitigates the negative implications of the fee and incentive award proposals. *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2019 WL 4034478, at *5–7 (E.D. Cal. Aug. 27, 2019). Still, the court can offer no assurance that the proposed fee and incentive awards ultimately will be approved. *See id.* at 7 (granting preliminary approval but deferring a decision on fees and incentive awards).

Lastly, the settlement agreement does not provide information regarding how any settlement checks will be treated if not redeemed by a class member. The parties must address this by the time of final approval, and clarify that uncashed checks will not revert to the defendant if the settlement as a whole is non-reversionary. If unredeemed checks will revert to the defendant, the court will have additional questions prior to final approval.

The court is mindful of the "strong judicial policy favor[ing] settlement of class actions." *Adoma*, 913 F. Supp. 2d at 972 (citing *Class Plaintiffs*, 955 F.2d at 1276). For that reason, the

---

[3] Assuming the net settlement award is $1,572,340, and there are 200 class members receiving equal portions, the total award per class member would be $7,861.70.

11

court concludes that the agreement is likely to be approved under Rule 23(e)(2) if the concerns expressed above can be resolved at the final approval stage. At a minimum, the court will require a more searching analysis of (1) the risks of further litigation, (2) support and justification for attorneys' fees greater than the 25 percent benchmark, including sufficient information to perform a lodestar cross-check; (3) greater support for the requested incentive awards to the named class member in final approval, and (4) an explanation of how unredeemed checks will be handled.

### B. Notice

Federal Rule of Civil Procedure 23(e) requires that prior to settlement of a class action, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where a class is certified under Rule 23(b)(3), the notice must meet the requirements of Rule 23(c)(2)(B). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F. 3d at 1025.

Notice must be the "best notice . . . practicable under the circumstances" and must provide individual notice "to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23, the notice must clearly and concisely state in plain, easily understood language:

    (i)    the nature of the action;

    (ii)    the definition of the class certified;

    (iii)    the class claims, issues, or defenses;

    (iv)    that a class member may enter an appearance through an attorney if the member so desires;

    (v)    that the court will exclude from the class any member who requests exclusion;

    (vi)    the time and manner for requesting exclusion; and

    (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

*Id*. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail

/////

to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The class notice packet satisfies Rule 23. It explains in plain language the parties to the lawsuit, the claims at issue, and the terms of the settlement. *See* Notice of Settlement at 1–4. It provides instructions on how to object or opt out with deadlines. *Id*. at 4–5. It informs class members they will be bound by the release of claims if they do not opt out. *Id*. at 3–4. The notice packet includes a place where information on the final approval hearing will go and indicates class members may enter an appearance through an attorney. *Id.* at 5. The estimated class member share also will be included in the notice or in an accompanying document. Stip. ¶¶ 1.33, 2.6. The court approves the notice plan.

### IV. CONCLUSION

The motion for preliminary approval is **granted.**

The court dismisses doe defendants.

For the foregoing reasons, the court **grants preliminary approval of the settlement** but cautions that the deficiencies identified above must be remedied before final approval is appropriate. Specifically, at the final approval hearing, the parties must be prepared to address:

1. The specific risks of further litigation if the case is not finally settled;
2. The reasonableness of the proposed attorney's fees, including in light of a lodestar analysis and the clear sailing provision;
3. The reasonableness of the incentive award; and
4. Where unclaimed checks will be distributed.

The court preliminarily **approves** the class definitions, Stip. ¶¶ 1.2, 1.14–15, and the settlement of the collective claims under California law.

The court **approves** and appoints Heffler Claims Group as Settlement Administrator.

The court **approves** and appoints attorneys Matthew Eason and Kyle Tambornini of Eason & Tambornini, ALC to represent the Settlement Class as Class Counsel.

The Notice of Settlement is approved.

/////

The court orders the following schedule, as set forth within the Settlement Agreement and proposed by plaintiff, Mot. at 41:

1. BMBC shall provide class member data **within 45 days** from entry of this order.

2. Heffler Claims Group shall mail Notice Packets to California Class and Collective Members **within 30 days** after delivery of class data.

3. Class members **shall have 45 days** from the mailing of notice packets to opt-out and/or submit disputes concerning class member status or workweeks calculated.

4. Class members shall submit objections, if any **within 45 days** of the mailing of notice packets.

5. Plaintiff's motion for final approval and attorney's fees and costs shall be filed **40 days** in advance of the final approval hearing.

6. The **Final Approval Hearing** is set for March 25, 2022.

This order resolves ECF No. 96.

IT IS SO ORDERED.

DATED: September 16, 2021.

CHIEF UNITED STATES DISTRICT JUDGE